The 4th district appellate court of the state of Illinois has now convened the Honorable President of the board, you know, presiding. Give me that quickly. Hey, good morning. Council. This is case number 4 dash 23, 1552. In Ray J.W. a minor. Are counsel ready to proceed? Yes, your honor counsel identify themselves for the record 1st council for the appellant. Your honor, my name is Gregory Peterson. I work for the office, the state appellate defender. I'm here for the minor J.W. Thank you and would counsel for Apple identify yourself please. James majors I'm representing the people of the state of Illinois. Thank you very much. All right at this time, Mr. Peterson may start your argument and maybe Mr. majors if you'd like to put yourself on mute during the argument, please. Can you do that? Well, okay. As long as there's no. That Oh, very good. Okay. Thank you. All right, go ahead. Mr. Peterson. Thank you. Your honor may please the court counsel as previously stated. My name is Gregory Peterson. I work for the office of the state appellate defender and I represent J.W. who was 15 years old when this happened. This is a case where the, an essential element of the offense was not only not proven below, but there was no attempt to prove it below. When the accused is an adult, it's black letter law that they, the fact of a touching, if it's in a sexual area, can a fact finder can infer that it's for the purpose of sexual gratification or arousal. The same doesn't hold true for minors and here there was no attempt whatsoever to prove J.W.'s intent. And what we have here is we have a relatively short video that neither confirms nor contradicts the testimony and we have just a few minutes of testimony. Really? The, the record is timestamped and we see how short the testimony was and I'm not. Excuse me. Good morning. Wasn't that the job of the trial court to decide whether or not that video confirmed the testimony of the victim here? Yes, Your Honor, but the testimony of the victim said nothing as to J.W.'s intent. The trial court's finding of facts said nothing as to the intent and that is an essential element here. So I want to stress that I'm not raising a reasonable doubt challenge based on the fact of the testimony, the fact of the touching and Your Honors are completely capable of crediting every single portion of her testimony while reversing outright. This is not a case where I'm asking to overrule a credibility determination. Well, on that video, which the trial court viewed a number of times at about the five minute mark or so, we see that J.W. goes to the back of the bus and there's some conversation, not all of it audible, and he makes a gesture. Could not the gesture had his right hand near his mouth and could it not possibly be indicative of someone performing oral sex on a male? And at that point, the video shows that A.K. turned away, rested her head and her arm against the seat in front of her. So couldn't the trial court infer or could the trial court infer from what was on the video at that time after the alleged touching that the intent during the touching was for sexual gratification or arousal? Not given the record as a whole, Your Honor, there's frequent there's frequent discussion in this record, including at allocution at sentencing where J.W. says this is all about a vape pen. The the the gesture that you're referring to is to me, it seems pretty straightforwardly from the record is about a vape gesture. It is it is not an oral sex reference, but more importantly, the trial court didn't infer that if the trial court had believed that that gesture was indicative of sexual intent, the trial court would have said so on the record. And here it seems very clear that what we have is a finding of a touching and a belief by all the parties below that that was enough. Well, it wasn't required specifically to make a finding with respect to sexual or sexual gratification, was it? I mean, in order for this trial court to have found J.W. delinquent, the trial court would have had to we presume we need to presume that the trial court knew the law, that the definition of this charge, sexual conduct included for the purpose of sexual gratification or arousal. So the fact that he found J.W. delinquent actually is the the finding implicitly, is it not? I disagree, Your Honor, with with the trial record. We have no discussion whatsoever of intent by any of the parties. It seems to me that the the logical inference from that is that no one thought that they were trying to prove it, as opposed to the fact that everyone assumed that it would be proven by implication. Because we also have clear law that it can't be proven by implication. There needs to be something other than the fact of the touching. And we know circumstantial evidence certainly is what's usually looked at, correct? Yes. And here, are you saying there's no circumstantial evidence? I really am, Your Honor. If you look at what the the cases I've cited in my briefing look to for circumstantial evidence, for instance, they look to erections, heavy breathing. They look to things that the accused has said. And here, the only thing that he says that we can hear is, are you mad at me? Which is absolutely not an admission that it was for sexual gratification or arousal. They often look to the location in which this occurs. And this is a crowded school bus. They are surrounded by their friends, and they're talking to their friends the entire time. That cuts very strongly against the fact that this was for sexual intent or sexual gratification or arousal. Well, we're talking about a 15-year-old young person. That age is different than the ages in the cases that you've used in your briefing relied on. Isn't that correct? I mean, those are 10 to 12-year-olds, by and large. Different in both directions, Your Honor. The in re Donald R., for instance, Donald R. was about 16 and a half. And the court there paid special attention to the fact that he had also admitted the touching. So essentially, I stand before you here with a 15-year-old client at the time, where there's a lot of case law that says I lose if he's 16 and a half, and a lot of case law that says I win if he's 12. And I understand that we are in the middle here. But we also have the rare instance here of none of the factors mentioned in other cases are indicative of sexual arousal or gratification being the purpose. We don't have those physical signs. We don't have those statements. We have the fact that it's in a group, right? We have the fact that this is very much a public act that is conducted with all of these other children, not only still around them, but talking to them the entire time that allegedly happens. So I want to go back to the gesture for a minute. How do you, when JW was at the back of the bus, how do you read or distinguish the gesture that you say was referring to a babe as opposed to a gesture with sexual connotations? In the entire context, Your Honor. We see at the start of the video him throw something towards the back of the bus. We see right around the time of that gesture, we see him looking around on the floor for something. I think it's not tricky dots to connect at all to say, he thought it should be back there. It wasn't back there. He was asking her if it was there. I think given the amount of times that the vape is mentioned over the course of the entire record, given, frankly, as a former high school teacher, the prevalence of vaping in our schools, I think this is a much more reasonable inference to draw than saying that this was a one-off reference to him receiving oral sex from her. Especially, I do want to emphasize, this is not an inference that the trial court drew on this record. I understand that we need to presume that the trial court knew the law, but here it looks, looking at the record as a whole, the assumption was that this was just like a case where the accused was an adult. When you're talking about looking at the record as a whole, we can't be looking at the record for the sentencing hearing or the dispositional hearing, correct? We have to confine what we're reviewing to what happened at the trial in juvenile court. Isn't that correct? There's an element of that, yes, Your Honor. The reason I referenced the other parts of the record here is purely because we're working in such a vacuum as to the inferences that were made or not made at trial. So, I'm referencing, for instance, his statement in allocution, not as exculpatory evidence that weighs towards the decision, but as context that explains that gesture, because I'm not fighting a credibility determination from the trial court as to his intent. There were detailed findings of fact here. There were arguments presented by both parties. There's not one mention of why he did it. And that, to me, the logical inference from that is that if he did it, he must have done it for sexual reasons. And that simply is the law for adults and is not the law for children like J.W. Well, obviously, trial court has to take each case as it comes before them and decide that individually. So, well, I don't have any further follow-up to your statements. I also wanted to emphasize, again, the stakes of this. J.W. will be required to register as a sex offender for this. He will eventually be allowed to petition to be removed. And I've had some informal discussions with the Juvenile Defender Resource Center. The success rate on those petitions over the course of a minor's lifetime is somewhere around 10%. So, I do want to emphasize the fact that there's every likelihood that for something that happened in his first semester of his freshman year, J.W. runs the risk of remaining a registered sex offender for life. And I think those stakes are especially serious when considered in the context of what was not proven or attempted to prove here, which is specifically the sexual intent, the sexual arousal, gratification, purpose of his actions. With that left to assumption and inference, placing him on the sex offender registry potentially permanently is significantly more serious. Well, certainly not diminishing the importance of that. I'm not sure that that's something we can or should take into account here in our review of the record. But at page 10 of the record, you actually mention two standards of review, De Novo as well as the Jackson Standard. You're not suggesting, are you, that we look at this record De Novo? I mean, the trial judge had to make a credibility determination when it heard the testimony of A.K. We can't make that determination all over again. Your Honor, I'm not challenging that credibility determination is the key here. I do think the law allows you for you to review this record De Novo purely because that credibility determination is not under attack. This is a case where, again, you can credit every single word the girl said as absolutely genuine, absolutely true, and then you can still reverse. So that's where my argument for a De Novo standard. We can still reverse because you're saying there was no evidence from which the trial judge could infer sexual gratification? Absolutely, yes, Your Honor. So what if the trial court, instead of looking at that gesture on the bus as one of where's my vape, looked at it differently? Under the Jackson Standard, if we applied that, we could not reverse. I think you could reverse there. I think the context as a whole would show that that credibility determination could have been faulty. I think that is an argument I could have brought in that circumstance. But if that were the case, I would absolutely not be suggesting De Novo. If that were the case, I understand that we would be entirely under the Jackson Standard. But here, what we have is no incriminating statements by JW, no physical signs of arousal. We have action that happens in the middle of a crowded school bus while they're both talking to their friends. I think there not only was it not proven below, but the circumstances as a whole show that this wasn't for sexual intent or gratification. But the stronger— We're talking about the touching. That's right. That's right, Your Honor. The touching of her vagina was not for sexual gratification. I don't think we know that on this record, Your Honor. And I think given that for minors such as JW and specifically not for adults, that intent there becomes an essential element that must be proven. And we simply do not have evidence in this trial record that proves that that would be sufficient for a trial judge to find it beyond a reasonable doubt. And that's the thing here, is that the Jackson Standard is hugely deferential to the determinations that the trial court made, but it's still about whether a rational fact finder could find it proven beyond a reasonable doubt. Here, it can only be proven by inference. And I do think it's inference rather than circumstantial evidence that is nonetheless compelling. It is pure inference. And the state in its brief offered you some inferences. I would reject all of those categorically. This is not a restraint case. You can see on the video the girl and her other friend moving aside to let JW come and sit over there. He's clearly welcome to join them on the seat. And the other arguments can be rejected similarly quickly. It's proof by silence. And that's not allowed for an element of a crime. If there are no further questions, I'll return on rebuttal. Thank you very much. Thank you, Your Honor. Mr. Majors? Yes, Your Honor. Can you hear me? Yes. You may go ahead with your argument. Oh, excuse me. As to this vape argument, that was not introduced at trial. That was at sentencing. And as to the being a sex offender for life, that wasn't at the trial. That's at the dispositional hearing or the sentencing hearing, to which they make no complaint. Counsel, excuse me. Good morning. What evidence was introduced at the trial from which this trial court could have inferred or made the finding that the purpose of the act was sexual gratification or arousal? Well, may it please the court, Your Honor, the court stole my thunder. It's that gesture of oral sex that he made. In fact, I think he says, I think I can hear on my version, it's the 505 through 509. He gets her attention when he's left, and he says, when we get off, and then he immediately displays a sexually explicit hand and mouth gesture, seeming to indicate he wants her to give him oral sex. I mean, that's the most damning evidence of his intent. And I think that alone, you can infer that he his intent. But Mr. That gesture actually occurred after the act itself. I mean, in criminal law, we look to what the elements are relating to a specific event. And the event was finished, was it not when he walked to the back of the bus? Correct, Your Honor. So how is the gesture that was made there allowable as an inference or evidence from which the court have made? I'm sorry, Your Honor. There was no resistance at trial. As to the video, the defense counsel never challenged it. I think he joined in admitting it. He had a different view of it in opposing argument. But there is no resistance to that video coming in, none, zero. And even if you discount that event, which is shortly after the incident, at 150, the started, then it went on until about 402. And the body postures of defendant, excuse me, respondent and the victim are consistent with her description. They appear to be going downward. Her facial expressions are indicate, excuse me, she was distressed. At 202, she turns her head and looks at respondent with a shocked expression. At 219 through 220, she says the word no to respondent. At the three-minute mark and following, they appear to be struggling. At one point, the victim, 352, leans away from respondent. At 403, he has his left arm around her neck. He is behind her then. She's leaning her head on her arm against the seat in front of her, indicating distress. She does that several times, especially when he attempts to talk to her. The 505 to 509, he gets her attention. And when we get off, and then he displays the sexual gesture. Again, she displays a facial expression of distress. And again, she places her head on her arm and against the seat in front of her. Then he calls out repeatedly, argumentatively, well, that's an indication that he has done something wrong. And in the DH case that they cite, which the defense won, but the perpetrator restrained the victim's legs. And the court found that what he said afterwards was indicative of something he did wrong. Well, counsel, how does wrong equate with sexual gratification or arousal? Saying that, or asking if she was mad at him, isn't the same thing as indicating that the act was done for sexual gratification or arousal. Well, as the court would- But to the vape, could it not, if we're going to even consider any of that? Well, may it please the court, again, there was no testimony about any vape during the trial. This is something the defendant said while he was not under oath at some type of post trial hearing. How that comes, how that can be a fact that you can rely on, I don't know. You either entered into the trial or you didn't. Counsel, you recited various parts of the recording or video in which you describe the actions of AK. But during these periods of time, certainly from 118 up through 345, she's looking around during that time, talking with her friends, laughing, conversing. She's looking at him. I don't disagree. I heard her say no at some point, but that's not till 343 where she says no, stop. But she's laughing and she's smiling at that time. So I guess the trial court could have, I mean, we're each, if we're looking at this video, you in one way, I in another, certainly the trial court could have viewed the video in a different manner. Isn't that correct? Yes, Your Honor. But as you know, we view the evidence in light most favorable to the state at this point. The trial judge had saw the demeanor of the victim before and after the act, and the trial court saw her demeanor and what she was really like in court. Nobody else did. Nobody else involved in this did, but he did. So you don't agree with Mr. Peterson that we need to look at this record de novo? No, of course not. I mean, one of their arguments that there was a vape that wasn't introduced at trial, that we don't look at the evidence in the light most favorable to the prosecution. That's wrong. The other thing is this girl is 15 years old and a guy is sitting on her legs the whole time. She testified the act started at 115 and continued to pass four minutes. He's sitting on her legs. You can see it in the video. Well, that's by invitation, was it not? In terms of there wasn't enough room on the bus, there were two people on that seat anyway. He forced himself there. This video speaks volumes. He forced himself into that position. He put his legs on her to restrain her and he touched her. You can see they're struggling going down. Their postures are consistent with her complaint. Her facial expressions are consistent with her complaint. His demeanor and his flight and his remarks afterwards are consistent with her complaint. Well, that's not the issue in this case, though, is it? Whether the act occurred or an act of touching occurred. It's the intent, yes. What? Right. The intent. Well, they're screaming. They've been screaming all along. There's no collaboration. There's no collaboration. Well, look at the video. Who's the best person to judge what that's worth? The trial. The trial of fact. Not the appellant defender's office. Right. And the corroboration on the video for sexual intent is what? He forces his way onto her seat. He's looking at her. First of all, he's targeting. Then he sits on her. Then he restrains her. Their body language is consistent with her complaint. They go up and down. Her facial expressions are consistent with her complaint. When he goes to the back of the bus, that's flight. Now, they're going to say, well, he didn't fly very far. Well, where is he going to go? It's a bus. He's on a moving bus. He goes back as far as he can. And then he starts making an effective apology, saying, oh, are you mad at me? And he makes that obscene gesture, which I think is the most significant piece of evidence as far as his intent. And it's in evidence, and it was not challenged. And the court just said, I reviewed the tape several times. It didn't pick out any particular part of the tape. Well, with respect to flight or the fact that he may have been hiding, I mean, we're looking at a school bus. There were no police on the bus. There was no place to hide. So I'm not sure that those factors and that aspect is that persuasive. Again, saying that or asking, are you mad at me, doesn't necessarily infer that there was any sexual intent or gratification or isn't informative of that. So with regard to the restraint, opposing counsel argued it differently. Well, if I may say, Your Honor, at page 10 of the respondent's brief, he says that, quote, he says sexual gratification. In this case, I think it's arousal. Arousal can be inferred by circumstantial evidence, citing In re Donald R. So they admit that. And then they say, quote, Well, this guy's 15 years old. He's, I guess, adulthood in this context is 70. So these cases are about 11 year olds, 12 year olds, 13 year olds. I don't have it. I don't think they have any application here. But some of them are dated. I mean, they're years old. Do you think the trial court could have made this determination based on the age of this respondent? Well, I know, Your Honor, is what the trial court said. I find the victim to be extremely credible. And the video, which I watched several times, corroborates that. That's what the trial judge said. I don't know what his mental processes were. Well, we don't. I think that's well. Also, I forgot them in the nature of the act itself. It speaks volumes. You know, they equate this to adolescent curiosity. I mean, come on, adolescent curiosity. You run up to a 15 year old girl or 14 year old girl and shove your hand down her pants. That's adolescent curiosity. The nature of the act speaks volumes. So your argument is the cases that they used are distinguishable on the facts. Oh, yeah. And they admit in their brief that it varies with the age. On page, I'm sorry, 11. That the closer you are to adulthood, the more the presumption applies or can be considered. I mean, I stayed another way, a 10 year old. You consider that or a 15 year old in this case. Two years away, a little bit over 15. I can't hear anything. I don't know if there's a technical problem. No one's asking questions. I'm sorry. I should have indicated. I don't have any other follow up, but you may continue making any other points you wish to make. But I was just reemphasized that this whole vape thing was not introduced into evidence. This whole thing about being a registered sex offender, that was never introduced to evidence. That's something they should have brought up at the sentencing hearing or dispositional hearing, and they didn't. So I don't know why they keep saying it's all about reasonable doubt. They don't dispute her testimony. And they say there's not enough circumstantial evidence to prove his intent. Well, look at the tape and the sections I've emphasized. I mean, that certainly shows what his intent was to arouse himself. Unfortunately, the statute says gratification or arousal. And the cases keep repeating it. I think this is a simple case of some boy seeking a sexual arousal by victimizing a girl. That's all it is. Do you have anything further, counsel? No, Your Honor. Justice Dierman or Justice Vancell, do you have any questions of counsel for Eppley? I do not. I don't hear any from Justice Dierman. Sorry, no. Okay. Thank you very much for your argument, Mr. Majors. Mr. Peterson, you have time for rebuttal. Thank you, Your Honor. I'd like to start with this sex offender registration not being challenged thing. Once the offense was proven and his guilt was found, sex offender registration was not in the trial court's discretion to order or not order. It's statutorily mandated. That does trace directly to the finding of guilt at trial. I would like to stress the degree to which the vast majority of the state's argument is completely not responsive to the issue that we're pushing here. Every single time AK looks as if something unpleasant is happening or terrible is happening, either, that's all consistent with simple battery, for instance. JW's supposed apology from the back of the bus is consistent with simple battery. It's consistent with trying to figure out why she was mad. I would also like to stress, and I think we all understand in our personal relationships, whether it's with a spouse or a child, are you mad at me is not an apology. That is not a thing that any of us would ever accept as an apology. The state's core argument here is that something happened and therefore he committed this crime. And that's not how that works in any circumstance of the criminal law, but especially this one where we have case law saying that intent needs to be proven. I would stress what the trial court said when making its credibility determinations. This is page 52 and 53 of the ROP. It's exactly what Mr. Majors was referring to. The court, the alleged victim in this case has indicated there was no consent for the conduct to take place. The issue in the case is whether the conduct took place. The court, after reviewing the video, the court finds her credible. The court also notes the timing for the DNA test. The court does not find that this changes the court's belief that the incident, and convinces the court that it did not happen. So the court's specific finding there is that the issue in this case is whether the conduct took place. That was one of two issues. And the other one went completely unproven. Well, but conduct includes the definition for the judge to have found that. Again, I think I alluded to that earlier. That definition includes the conduct was done for purposes of sexual gratification or arousal. Your Honor, not in Judge Costigan's phrasing. He's talking about whether or not an incident took place. He's talking about whether or not it happened. There's no discussion whatsoever of why. And that's the key argument that we're bringing here. I do maintain that the statement that JW was targeting AK from the beginning, and that this is a deliberate attempt at restraint, is somewhere between incredible and ludicrous based on this record. I'd like to also point the court to In re DH, which Mr. Majors cited for other instances where the defendant has made some statements that are indicative. I'm hesitant to curse before this court, but the statement he made there are, are you expletive or are you expletive? He also, in that case, the respondent referred to the victim as a buzz down, which he clarified at trial was someone who sucks a boy's stuff. That's evidence. That's evidence of sexual arousal or gratification. And yet that, that was still a doubt here. We have nothing of the sort. We have the, we have the respondent's age. You have the respondent's age. So why couldn't the trial court rely on age and common knowledge? Because, because of longstanding appellate precedent, Mr. Majors criticizes the cases as old. I say that they've, they've lasted that long for a reason. That says intent needs to be proven by circumstances. If, if this court were to hold that the fact that he's a 15 year old high school freshman is enough, that this court would be the first to do so. Even with the, the older child in re DH, there were statements and there was an admission of the act taking place on an older child. But I would ask this court to absolutely credit the girl in everything she said about the touching taking place. And then I would ask this court to reverse outright. Thank you. Thank you. Justice Dierman and Justice Manson, do you have any questions? I do not. Nope. Okay. Thank you. All right. Thank you counsel for your arguments this morning. The court will take the matter under advisement and render a decision in due court. These proceedings stand at recess at this time.